The case in the morning is 417-0021, People of the State of Illinois v. Hartema. For the appellant, is it Krieger? Yes, sir. Mr. Krieger, and for the appellant, Ms. Brooks, you may proceed. Good morning. May it please the Court? This morning I wanted to argue Issue 1, the lack of proof of the aggravated factor in my client's aggravated DUI conviction. The State claimed that my client's DUI conviction was aggravated since he did not possess a driver's license. Yet he did. He had an unexpected license that was suspended. Since the State failed to prove the charge of aggravator, it was error for the Court to deny the offense of motion for character burden. As an initial matter, this issue is properly before the Court. The State argued that this issue is weighed by my client's decision to put on evidence, or by the decision to put on evidence for failing to renew the motion for character burden. Forfeiture, rather than waiver, is the correct rubric for analyzing the issue of procedural default. The Supreme Court has declared that waiver requires an intentional relinquishment of a known right, like the rights given up during a guilty plea or during a jury waiver. Forfeiture, by contrast, is simply a failure to object. Since the State's cases, the law of procedural default has evolved to recognize the distinction between forfeiture and waiver. In this case, there's no question that there was no earlier recommended waiver. My client's relevant rights, the right to defend his defense and to appeal, were never mentioned, and therefore couldn't be given up. Now, to be clear, we're not arguing that this issue was preserved, but also that it was not lost entirely. When an issue is weighed, a plain error is not available. When an issue is merely forfeited, it is. In this case, a plain error does apply. The initial step in the plain error analysis is to determine whether error occurred. In this case, on the merits, there was error. This included the State's failure to prove the charge-aggravating factor. My client was charged under a provision that he did not possess a driver's license. The evidence, however, showed that my client had a driver's license, though it was one that was suspended. Given the lack of evidence, the court erred in denying the intent of the motion for character burden. The State argues that the no-license provision should be interpreted as a way to encompass all instances in which a license was suspended. That's not true, however. The legislature, in the aggravated DUI statute, set out specific different provisions addressing suspended licenses. It only allowed a driver driving a suspended license to get an aggravated charge if the suspension was for several reasons that were set out. In addition, the State argues that the no-license provision should be interpreted to mean no valid license. In our reply brief, we cite several instances in which the legislature has used that language concerning a valid driver's license or a valid no-license. Does the record show why your client's license was suspended? It does not. The driver was abstract, has one line simply indicating that it was suspended at the time of the offense. I did try to search to see if there was any codes out there that could give some indication, and there's no indication whatsoever. Was your client charged with driving while license suspended? He was not. He was charged under the provision for lapping a driver's license. So there was no DWLS charge involved in this appeal? I'm sorry. He was charged with a DWLS. That was a different charge. He was charged with driving while license suspended. Well, I couldn't tell from the briefs what happened to that case. I'm sorry. I believe he received a concurrent term for that. It was a misdemeanor offense. So he was convicted and sentenced on the driving while suspended charge in this case? Yes, in this case. Okay, moving back to you. I wasn't clear from either of the briefs what happened with that, but moving then back to your argument, wouldn't we have to say that Rosenbaum was wrongly decided in order to adopt what you're presenting to this court in defense of your client? Yes, I think you would need to decide that Rosenbaum was wrongly decided. And it was wrongly decided. From what it's worth, you'd only be disagreeing with the victim, Rosenbaum, because Rosenbaum only adjusts an expired license, rather than a suspended license. But Rosenbaum's analysis was mistaken for several reasons. Should we take into consideration that it was a 2011 case and nothing has happened since then by way of new legislation or by way of having that case cited by another appellate court or the Supreme Court addressing it? It's true that legislative silence can be considered in terms of understanding what the legislature's intent was. In this case, I think, although courts should consider it, they don't consider it a strong fact that the Supreme Court has found that it's not a dispositive factor. And here, I think, it would be mistaken to give too much weight to the legislative silence. Particularly because Rosenbaum's holdings were with regard to an expired license. And the argument here is that there is a suspended license. And Rosenbaum's findings of a suspended license were dicta. So the legislature is obviously very busy. And it would be surprising to me that they would take specific action to address dicta in an appellate court decision. If it were to overrule it on the main holdings of Rosenbaum. Why do you consider it dicta? Because in Rosenbaum, the client was convicted after having driven on an expired license rather than a suspended license. And the Second District addressed an expired license and said, We also are going to note that our interpretation, if applied to a suspended license, would render the provisions superfluous. And so it kind of went out of its way to address this side issue. And I give it credit for doing that. Just because for the Second District, for its candor in admitting that its interpretation creates a superfluous reading. But I don't think the Second District followed appropriately the rule against superfluous readings. The reason we have that rule, which is that, in general, we don't second-guess what the legislature does. We read the instructions by their plain meaning. And finding a superfluous reading goes against the grain of that rule. Let me ask you a question that would be practical, I suppose. It is possible that your client's license was suspended for something that would be an aggravating factor. Is that true? It is possible, yes. And it's possible that the State could have discovered that by doing more than just getting the abstract. Though you couldn't, apparently. One would assume that the Secretary of State would be able to do so. So, under your interpretation of what has occurred, it could have been that they charged him under the wrong section. Or they charged him under the proper section. And he is guilty of driving with a suspended license. But there's no aggravation to it. Well, I would say they didn't charge him under a suspended license. That much is clear. They only charged him under a non-licensed position. It's possible they knew that. I would think if they knew that, though, they would put that into the argument. They would say it was suspended based on a 2010 amendment. I mean, they could have found out about it, but didn't. For whatever reason. But, as you might as well know, you can only affirm based on the evidence before the court. Oh, yes, we do know that. We were just talking about that the other day. I kind of enjoyed that. We need to be reminded once in a while. You've got to find your humor where you can. Not that we're making light of the case, but just rather there are oddities in the law. And we do need to be reminded of our function every once in a while. Thank you, Your Honors. With Roberto Rosemont, in addition to the fact that the reading would render the proceedings superfluous, we also have to take a look at when the two provisions were put side-by-side. And that was in a comprehensive rewrite of the GUI law that tried to clear away some of the conflicts that had previously existed. The courts are reluctant to find further significance whenever it was all about comprehensive rewriting of the law. In addition, I think it's not unreasonable to think that the court would treat a driver who's driving, who hadn't made the effort to get a license in the first instance, different than one who had gotten the license but clearly hadn't suspended. And it's a fairly, I would say, the assignment would be towards interpreting the provisions in a non-superfluous way. And so that if there is any possible reasonable basis, that that reading should be, the plain reading of the statute should be the one that is adopted. In this case, the plain reading is that, that my client was, for the aggravated infraction of my client's propaganda, was that he possessed no driver's license. In this case, he did possess a driver's license, which is why we believe the court failed. And if there's any ambiguity in the statutes, the rule of law would require that you interpret them in that kind of state. So, having established error, we believe, the question is whether the error arose from a plain error. And we've argued that it did in this case under both a fiscal surveillance evidence test and a substantial rights test, that evidence was fiscal surveillance because the only evidence in the state's case proved that he had a license, and it was only when my client testified that he said he didn't have a driver's license. So, it's an issue for the 32-point bridge, and that would have made a difference if they weren't making it obviously simple to DUI. We also, it's also our position that this would qualify as substantial rights, a plain error as well, because an unauthorized conviction offense is not natural. Are there any other questions? We do not. Thank you. You'll have time on rebuttal. Thank you, your honors. My name is Allison Page Brooks. I'm here on behalf of the people. May I please report, the state's position is that the defendant's argument is unavailable under the case that was decided, I think the case was Slaughter, that, I mean, some of the language that was used was said, waiver versus foreign courts credit, distinguish between waiver and forfeiture, but Slaughter actually said it was not available. The claim is not available when the defendant, since he's satisfied evidence here, testifies. The Barrow case shows that if the motion for directive verdict is renewed after the conclusion of all the evidence, that doesn't mean like the Connolly case, I think Connolly got this a little bit wrong in the sense of deciding whether the state's evidence was sufficient to overcome the directive verdict motion. That's not what happens if the, I think Connolly reached that question because the motion for directive verdict had been renewed at the conclusion of all the evidence, which it was not here. But even if it has, Barrow, I think, when it goes back to Turner, then to the single case of LeMay, shows that then the question becomes something different. It becomes then considering all the evidence, not just the state's evidence. So the standard after that would be the total failure of evidence to prove any necessary evidence when all the evidence is considered together. So essentially, there's no opportunity to get this particular question reviewed, which is why it hardly ever happens. I haven't really found, other than my state of Connolly case, there's not a very common situation where the defendant testifies after making the directive verdict motion, and then wants that testimony not included within the scope of review. And the other cases have recognized the defendant's risks, the admission of unfavorable evidence after a directive verdict motion is denied. Well, under the defendant's view here, and perhaps maybe the implied view of the Connolly court by reviewing only the state's case, is that sort of setting aside and ignoring the unfavorable evidence admitted in the defendant's case in chief or the defendant's own testimony means that if that defense position is correct, then there is no risk to presenting evidence. Because this court would have to simply review the state's case independently and decide whether the motion for directive verdict was improperly denied or not. Well, what was it that was so damaging in the defendant's case? Well, the way this came up was... He said I didn't have a license? Right, well, he did not raise this particular argument specifically in his motion for a directive verdict. So his trial strategy, he left the car, was arrested or apprehended away from the car. So his defense was he was not driving. And his explanation for why he was not driving is because he did not have a license. So essentially he admitted that as part of a defense towards another... Why is his subjective belief and his legal assessment of whether or not he was authorized to drive have anything to do with whether he had a license or not? How is that an admission or admission against interest given that we have to engage in a legal analysis of what his status was given the fact that his license was suspended? Right. But he had a... Right, and that question is a little complicated to answer because this is sort of not like the typical sufficiency of evidence argument where the court understands it's obvious to everybody what the elements needed to be proved are and then the only question is whether the evidence was sufficient to prove those elements. Here it seems there's a dispute as to the actual nature of the element itself which means that it calls for a no vote review of what the legislature intended that element to mean. Why would the legislature care about aggravating a DUI offense because somebody had gotten into a fender bender and they didn't have the appropriate insurance and it was suspended for that but the earlier fender bender had, you know, it was daytime or nighttime no alcohols involved and the property damage is simply enough to be worried about the fact that the individual didn't have insurance. They could get their license suspended for that. Right. Well, why would that aggravate a DUI? Because they don't have a legal right to drive. Yeah, except that there's no connection between the mischief that's sought to be remedied by the aggravated DUI statutes and what occurs. What connection is there between... Big safety. Because the goal of the licensing statute... Yeah, but the aggravated, it's for... The real mischief is stop drinking and driving. Stop having repeated offenses. Stop refusing to do breathalyzers. I mean, the whole thrust of aggregated DUI is not, you know, well, you had your insurance card and you have three moving violations. It's... Everybody's dangerous if they drive while they're drinking. Not everybody is dangerous because they have three speeding tickets in a 12-month period. I mean, we don't want them to do that, but they get sanctioned for that. I don't understand the connection between the two that the legislature has thought of that would make you treat G as superfluous. Well, someone who is willing to drive unlicensed, that aggravates it because they're already breaking the law by driving anyway. True. And the driver's licensing scheme is regulating the ability of people to drive primarily based on whether they could be a safe driver. That is one of the main reasons for having a driver's licensing scheme. So someone who evades the driver's licensing scheme, who's not been determined by the Secretary of State to be a safe driver, who then goes out and drives and then does so while impaired, then they're sort of, like, doubly offending. And that is something the legislature can consider in the interest of protecting the safety of other motorists on the road. What's the connection between reckless homicide, which is an aggravating factor, or previous DUIs, and a lesser suspension that has to do with the ordinary rules of the road? I mean, there's quite a disconnect when you say specifically, hey, you've had a reckless homicide. We're going to, you know, that's a real serious problem as opposed to speeding. Because speeding, if that was as serious as you're now asserting it is in terms of the safety of the public, we could have a hundred of these cases every day from Lincoln to Springfield or wherever else people come to work at the State of Illinois because nobody evades the speed limit. And it'd be pretty easy to get three tickets in a 12-month period if you did other travel besides that. I think you get the thrust of what I'm saying. I'm saying there's a disconnect. And I think that the state may have charged under the wrong section or not gone far enough to find out what the suspension was that the defendant had. Well, I guess there's no complaint here that the statute violates due process and has a no rational basis, for example. I don't know that that's the argument. So, essentially, the wisdom of the legislature's approach to regulating safety of the roads through this subsection H, then I think the court's question is more towards what's the evil to be remedied for purposes of what the legislature intended these words to mean. If that's the thrust of the question... Yeah, I think it is. Okay, well, then, essentially, the legislature did try to keep unlicensed drivers, people who do not have a valid license, because that was in the legislative history. To the extent that the defense says this is ambiguous, it's not a grievous ambiguity, because the word valid is used in the legislative history. So, I mean, that's what the legislators themselves intended this to mean. What does G mean? Right. Okay, well, subsection G is different. G came about in subsection C-1, 1999. So that is a different part of the statute. They're not right next to each other initially. They look like that now, but that was only because of an amendment in 2008. Well, so what does the amendment mean when it puts them together? Right. Well, if I could get to there first. In 2006 is when this H comes into being in the form of subsection G. Well, G then moves to H, and C-1 moves to G, and now they are right next to each other. So it does look like they sort of put them together, but the question is, what did this mean in 2006 when the legislature passed it? I'm not sure that the meaning somehow changed just because it was moved from G to H, and the language was exactly the same. So the question is, when the legislature put this in subsection G in 2006, what did it intend? And I think the argument based on the 2008 reordering of these subsections doesn't really get to what actually the key issue is, which is what the legislature intended when this language was first put into law. Now, G is different. The current G is different. And the one thing I found, and this sort of rebutting Rosenbaum's, the implication of Rosenbaum, there is superfluousness here, is that G does not apply to, I'm sorry, H does not apply to a person who has a non-compact state license from Wisconsin or Michigan, neighboring states, or almost neighboring states, who then drives into Illinois. So somebody who had a Wisconsin license, it's valid in Wisconsin. It's a valid license. They're not violating H by coming in Illinois and driving drunk. They're violating G if they had a prior Illinois summer suspension, and one of the cases I cited was a Wisconsin driver who had a Wisconsin license after getting an Illinois statutory summer suspension, comes back in Illinois, and then gets caught driving. So essentially, they have a valid license in Wisconsin, but they're still violating Illinois' law against driving on a suspended revoked license. So there is a disconnect there, and that is a key argument to understand in order to show that these are actually complementary provisions, not entirely superfluous. There is some, there is overlap, sure, there might be a great degree of overlap, but she could have been in Illinois, so it's next to a non-compact state in Wisconsin, and a large population center close to Chicago, southern Wisconsin, that may be coming into Illinois, visiting Chicago, for example. There may be, which centers could rationally perceive the need for sort of like an extra provision to kind of cover all situations, and not just simply say that, well, because if you violate this on a suspended license, and you're not violating G, why should you violate H? Well, you know, these are not complete, these can be viewed independently, and they can be part of a comprehensive scheme without us saying that the one is just somehow subsumed in the other, because G is not subsumed in H. You can have a valid license, you can still violate G, and that's a state's position. But you're arguing there's ambiguity in the statute, aren't you? No, I'm not arguing ambiguity, they said there is ambiguity, it's not like the defendant automatically wins under the rule, Well, to consider some of the arguments you've made, we would have to find the statute ambiguous, because otherwise, I mean, because our number one priority is to look at the language of the statute, and apply that language, not look at legislative history, or how they moved it around in the statute, or what somebody said across the street in the House or the Senate, and so if we don't find any ambiguity, none of that stuff really matters, correct? Right, I understand that, but the key in plain language is the focus on the word possess. The defense says, I have a license, well, had is the past tense for the two, but did he possess a license on April 12th, 2016? And just because the evidence he's relying on, this is study aside, the whole point of directed verdict motion, you know, you can't just look at part of the argument, you have to look at all of the prosecution's evidence, and you should disregard unfavorable evidence, so instead if this unfavorable evidence needs to be disregarded, then he loses on that point. But even though, even just granting his argument to pass that point, the question becomes, is the fact that the elderly Secretary of State previously issued a license, but would have not expired, does that mean that he did, in fact, quote, possess a license, which is in the meaning of subsection H? But the point is the word possess, because the legislature would have known under subsection, I'm sorry, section 6-209 of Illinois Vehicle Code, when the license is suspended, the person must surrender it to the elderly Secretary of State and shall be retained by the elderly Secretary of State for the term of suspension. So the legislature would have known when it used that word possess in subsection H, the operation of 6-209 means that a person cannot possess a driver's license at the time during their suspension because they are legally obligated to surrender it to the Secretary of State. So if the court then looks at these in combination, then it should be obvious that the person cannot, quote, possess. In plain language, no possession. How can one possess a suspended license because it has to be surrendered? And not just talking about the car, I mean, essentially, this person has no privilege to drive. And to the extent that this depends not on the physical possession of the car, but the legal privilege to drive, he does not possess the license from the state to drive at the time his license is suspended. And that is the plain language argument. And to the extent that he tries to argue the ambiguity, we have impaired material, we have the legislative history, it's not previously ambiguous such that the defendant must have been under the rule when it being in effect at the state level. Ms. Brooks, do you know of any other case than Rosenbaum where an appellate court has said, we understand our ruling renders a statutory section superfluous, but we don't care? That seems like a strange holding to me. I haven't seen it. I think this court could get past the superfluous idea by noticing something that the Rosenbaum court did not consider, which is the important implication of people from out-of-state, non-compact states who would not violate subsection H because they do have valid licenses that are valid in their own states and come to Illinois. But H doesn't say valid, it just says licensed. It doesn't, but it does say possessed, and that's why the states mark it with a C where possession means that it must be in fact possessed. And a license meaning privilege? He doesn't possess the privilege, it's suspended. Does he possess the card? No, you can't even possess that because it has to be surrendered and retained by the Secretary of State. So, I mean, he doesn't have a license when it's suspended, and he doesn't possess the argument. The fact that it would have been previously issued doesn't mean that this aggravating factor does not apply to him. It's not intended really to apply to never licensed drivers. I think the Rosenbaum court got that right when it said that the license was expired, for example, that that defendant violated H. So the defense I point, I think, is that this somehow meant to apply only narrowly to never licensed drivers, and that's not sort of what seems to be the legislative intent. And so for those reasons... Oh, the defense makes a plain error argument to accept that that is relevant. Plain error has to be clear and obvious. And it can't be clear and obvious when the existence of the Rosenbaum opinion is out there. So I think that would make... sort of, like, make a plain error argument unavailable. The existence of the Rosenbaum precedent makes that error not clear and obvious. If it needs to be said, it might be there. And that is the extent of my argument. I entertain no questions. We have no more. Thank you. Thank you. Rebuttal? I just have two points. The first is to address the opposing counsel's argument that the no-license provision is not superfluous because it applies to out-of-state drivers. I think that interpretation goes against the plain language that was used in other parts of the statute. The legislature knows how to talk about out-of-state drivers in the part of the statute that adopts the drivers' compact and the legislature has shown that they know how to do that. So if they wanted to do that, they could have done that in a clear way. And that is not... I don't think that that's a reading of the plain language of the statute that holds up. And the second point, and then Justice Turner asked about the driver and the license suspended, wasn't addressed well in the briefs. He was charged with that. It was found before the indictment. And he was sentenced on that to a 60-day concurrent jail time. Just to clarify. Okay. I have a third point I hope you'll address. Ms. Brooks argued, I think pretty convincingly, that if your client's license has been suspended and it must be surrendered, how could your clients possess the license? Well, I think that the... If you look at the DOI statute as a whole, it's not talking about possession of a physical license. It's talking about whether you have the privilege to drive. In this case, he did have the privilege to drive. It had been suspended. I know it seems like a semantic distinction. Oh, I think so. My answer would be that the DOI statute is concerned not with documentation but with the abstract rights that are given out. Well, I'm trying to think back.  and you get your notice from the Secretary of State or when your client gets her notice from the Secretary of State that you must surrender your license. Does that not mean you have to send in your license? I'm talking about the card itself? Yes. Well, then how can you possess it? You send it in. And you're supposed to, at least according to law. Right. Well, I think your status would still be that you had a suspended license rather than that you had no license. In the parlance, if you ask, did you have a license? Well, you sent it back in, but you still had a license, so it's not expired. So you're saying you still possess that license? You still possess a suspended license is what I would say. Because the DOI statute is not concerned with cards. It's concerned with abstract privileges. That make sense? Is that your answer? We do not. Thank you. Thank you. I take this matter under advisory.